Call our next case 23-1103. Kalu v. Spaulding et al. Mr. Randolph. Good morning, your honors. Daniel Randolph on behalf of plaintiff appellant Mr. John Kalu. I'd like to reserve three minutes for rebuttal. Mr. Kalu has multiple Bivens-eligible Eighth Amendment claims that arise from the repeated sexual assaults that he experienced as a federal prisoner. And the district court was wrong to dismiss those claims. Let me get straight to my concern here, right? There's the Supreme Court has made it clear that Bivens is rather restricted, so to speak. And while Bivens has been recognized in this circuit in the shorter case with prisoner-on-prisoner sexual assault, would it be an expansion of Bivens to say that guard-on-prisoner assaults are within the scope of what the Supreme Court has recognized in Bivens? No, your honor. It would not be an expansion. And I think one threshold point that's really important to emphasize is that while the Supreme Court has narrowed Bivens and has said that it is judicially disfavored to recognize a new Bivens claim, the Supreme Court has expressly declined to overrule Bivens and has set forth a very clear two-step framework that courts are directed to apply. And so to answer your honor's question... There's some flashing lights there, though, aren't there? Especially in Egbert. Well, your honor, there's a framework, and our view is that that framework supports Bivens eligibility here. And to answer Judge Restrepo's question about whether this expands Bivens, our view is that it does not expand or extend Bivens because the relevant offense here that Lieutenant Mitternach is alleged to have committed, i.e. a direct sexual assault on multiple occasions committed against Mr. Kalu, is more egregious than an allegation that a prison official was merely deliberately indifferent to the substantial risk that a third party would commit a sexual assault. And so in every case, that is a more egregious offense. So it does not expand Bivens protection or extend new constitutional protection to recognize that obvious fact. I think another way to say this is that when Lieutenant Mitternach repeatedly committed these sexual assaults against Mr. Kalu, he was also deliberately indifferent to the substantial risk that Mr. Kalu would experience sexual assault. All right, let's stop right there with the deliberate indifference because there has been considerable discussion as to whether or not Farmer, which sets out at length the deliberate indifference test is the center post of deliberate indifference jurisprudence, whether or not it is a Bivens case. And it would seem that the Supreme Court has just as explicitly listed its cases that are Bivens and deliberately excluded Bivens from that listing. Do you agree? Your Honor, what I would point to is this Court's holdings in Bistreon and in Shorter in published authority that when the Supreme Court listed those three Bivens contacts, it did not intend to exclude Farmer from that list. Except that that was prior to Egbert. But, Your Honor, that's correct, Your Honor, but Egbert didn't add anything new to that particular issue. Egbert actually only addressed the special factors part of the framework. In Egbert, the new context step of the framework was not even at issue. And so, yes, Egbert did list the three, you know, marquee Bivens cases. Could we get, you've used the context, and could we get back to that? Because it seems to me that that's where the answer here lies, that, and you've, it seems, quite correctly set out that we've received a clear direction about the analysis we're supposed to adhere to. In the first instance, whether or not the claim sets out a new Bivens context, right? Yes, Your Honor. And then possibly the need to reach a second step that if it does, are there special factors that we counsel against? I'm not sure I entirely understand your argument, maybe I do, as to why this is not a new context. And I can see that there's not as much direction as would be helpful to all of us in deciding what constitutes context, period, new or otherwise. So, are you saying that the context is sexual offenses committed within a prison? Your Honor, we're saying that farmer is the context, and this Court can also look to its opinions in Bistrian and Shorter in defining that context. And so, we would say that the relevant context is... But deliberate indifference would not be applicable to a claim solely against Minadetsch, would it? Well, Your Honor, that was the point I was trying to convey earlier, which is that deliberate indifference is a lesser mental state. You can sort of think of it as a lesser included offense. And in fact, the Supreme Court has a discussion of this in its farmer case. It talks about mental states existing on a spectrum from negligence on one end all the way up to knowledge and purpose on the other. And deliberate indifference is in the middle. It's like recklessness. And so, Lieutenant Minadetsch is on one end of the spectrum. He, with knowledge and purpose, is causally responsible for these sexual assaults. That's a more egregious offense. And so, our argument on the new context point is that... There's nothing in the jurisprudence, either ours or the Supreme Court's, that discusses a comparatively egregious nature of conduct as being a factor here, is there? It's fair, Your Honor, to say that we're not aware of a case that explicitly applies this sort of lesser included offense analysis. But our argument is that it's implicit in the framework. Because the Supreme Court jurisprudence is pretty clear that even a That's correct, Your Honor. So, isn't there a difference between inmate on inmate violence, specifically inmate on inmate sexual violence, and a prison official or corrections officer perpetrating a sexual offense against a prisoner? Yes, Your Honor. There is a distinction, but our argument is that it is not a distinction that would expand or extend Bivens because it's a distinction that only makes the offense more egregious. And if Your Honor is not persuaded by that... Well, but that's why I asked you about egregious. And I think... I may not disagree with that proposition. I'm just trying to fit egregiousness into any kind of guide, any kind of direction that we've been given by the Supreme Court. Because I really do think that Egbert has been much more clear and much more robust in its direction to those of us on inferior courts as to how we look at these cases. And Your Honor, we would agree with you with respect to the special factors analysis. And if I might address that, because we do think that Egbert provides... Following up on what Judge Smith is asking you. So, it's your position, and help us out with this, that if we were to say it's not an expansion of Bivens to allow a cause of action for guard-on prisoner sexual assaults, that that's different than shorter, which is prisoner-on-prisoner, which is closer to farmer, right? That's correct, Your Honor. So, how is it not an expansion? Because you're allowing lawsuits against a whole new class of folks. Well, Your Honor, our argument is that Lieutenant Mitternatch would be liable under the same standard because it's a lesser included mental state. And if the Court's not persuaded by that argument, I would like to address the special factors piece of this, because we do think that Egbert is quite helpful on that point and supportive of Mr. Colley's claim on that. Would one of those special factors... Yes, Your Honor. So, the most important... There's a long list of special factors, but the Court was clear in Egbert that they all, and in Hernandez, that they all distill to a critical to our argument here. We would point the Court to the Prison Rape Elimination Act of 2003. How does that help you? It seems to me new context is where your best argument lies, because I've had a hard time seeing special factors helping you. But the PREA, it provides nothing in the way of remedies. Here was an opportunity for Congress to say something, and they didn't. What they did was speak to, in a kind of consciousness-raising way, a very serious problem that exists in prisons, plural. Not just federal prisons, prisons across the board. They went no farther. And doesn't that implicate the separation of powers argument as well? Yes, Your Honor. It does implicate the separation of powers, but in our favor. And the argument there is that in 2003, when Congress enacted PREA, it didn't enact this legislation in a vacuum. It enacted this legislation against a judicial backdrop of decisions from the Courts of Appeals and from the Supreme Court that led Congress to assume that a Bivens remedy would be available as part of a zero-tolerance piece of legislation that was Congress understood that based on those judicial decisions, recognizing Bivens remedies at that time, that this would be a critical part of this legislative framework that it was building. And by the way, the executive branch understood the same thing. And this is something that defendants fail to acknowledge at all or respond to in their briefing. But when the executive branch promulgated regulations implementing PREA under an express statutory authorization from Congress, it included a provision that made clear that statutes of limitations would apply to inmate lawsuits brought after administrative remedies would be exhausted. And in the Federal Register clarified that those inmate lawsuits included Bivens lawsuits. So as far as the executive branch was concerned, and we're directed under Egbert also to heed the judgments of the as part of its framework, a Bivens remedy. And I see that my time has expired, but I'm happy to answer any questions. Did PREA include a remedies piece? Not in its explicit text, Your Honor. Although I will highlight the fact that it did cite to farmer. Excuse me, Your Honor. Did it even recommend one? It cited to farmer. And this court has explained that it cited to farmer. All it did was mention farmer, cite farmer, and say what farmer held with respect to deliberate indifference. Yes, Your Honor. But farmer is a right and a remedy, as this court has recognized. It does not just identify a constitutional liability. It also recognizes that Bivens should be available to redress that harm. And our view is that Congress would not have had a different reading of farmer than this court has had on two previous occasions. Thank you, Your Honor. I will save hopefully some time for rebuttal. Oh, Mr. Randolph, I think Judge Sirica might have something. Apologies, Your Honor. Why did your client withdraw the amended complaint against Warden Spaulding? And what effect did that have on this? Do we have a waiver? Yes, Your Honor. So when Mr. Kalu withdrew the amended complaint, he was making clear that he wanted to proceed on the basis of the original complaint only. And the reason why, after withdrawing that amended complaint, the case would proceed only with respect to Lieutenant Mitternatch is that that original claim against that original failure to protect claim against the warden had already been dismissed by the district court on erroneous grounds. And so, of course, it would, as a consequence of Mr. Kalu withdrawing his amended complaint, that district court proceeding would go forward only with respect to Lieutenant Mitternatch. However, the reason for that was not because Mr. Kalu was waiving any claim against the warden. The reason for that was that that original claim against the warden had already been superseded. Was the original complaint not superseded by what happened afterwards? No, Your Honor. That's why the district court allowed for Mr. Kalu to withdraw the amended complaint and essentially restore things to the state of play after the district court's dismissal of the claims against the warden and against Bittenbender, which happened in March of 2021. And that is the ruling that we now challenge on appeal with respect to the warden. I'm happy to address that waiver issue as well on rebuttal, if I may, because I think that that's also important in this case. Sure. Thank you. Mr. Euless. Good morning, Your Honors. May it please the court. I'm Assistant U.S. Attorney Richard Euless here for the Appellees. Your Honors, I want to start with addressing Farmer. Judge Smith, I know that this is an issue that you raised during a counsel's argument. It is our position that Farmer is not a recognized Bivens context. As you pointed out, Judge Smith, the Supreme Court did noticeably omit Farmer from the list of acknowledged existing Bivens cases in the decision. What do we do about our own court's jurisprudence then? Your Honor, from our perspective, this hearing was wrongly decided on that basis. But I will say that that is not a conclusion this court needs to come to to rule in our favor. That's just the point that I wanted to get out off at the top. I'm going to proceed for the rest of my argument, Your Honor, assuming that Farmer is a recognized Bivens context, because I think that there's still a very clear path to this case and the facts and the allegations in the complaint is a different context from Farmer. As the court questioned, we have staff on inmate assault, not inmate on inmate assault. In this court, in prior Eighth Amendment cases, Bistring and Shorter, when it acknowledged and found that there were Bivens claims available, the court was explicit in saying inmate on inmate. Now, this is a distinction with the difference, all right? The claim in the complaint against Mitternatch is for sexual assault. The claim at issue in Farmer was deliberate indifference, okay? The fact that we have a different cause of action arising from the circumstances of these two different cases, from our perspectives, Your Honor, is a very persuasive illustration that what we have here is a different context. From a factual perspective, we also have an inmate in Farmer and the inmate in Shorter transitioning inmates with outwardly feminine characteristics who were housed in BOP institutions, all-male BOP institutions, where the BOP would have had reason to anticipate that they were more susceptible to sexual assault than their prison mates. That is not the circumstance that we have here, Your Honor. Well, here you had the plaintiff complain about the assaults before he was sexually assaulted the third time, right? So BOP or the supervisors of this particular prison knew that this was happening. So for the claim against the warden, Your Honor, and I will again, for present purposes, assume that a deliberate indifference claim was actually pled against the warden. Yes, there is evidence or there's allegations, there's plausible allegations that the warden was made aware. Yeah, well, aren't there allegations that the warden not only was aware, but that the warden stated back he would look into it? Correct. And then you have downstream a move of Mr. Caylew to an SHU, right? That's correct. So does that sound like it is inadequate to the point that it would rise to deliberate indifference? What do you need for deliberate indifference? So it depends on whether or not we're talking about deliberate indifference of a line-level corrections officer, for example, Judge Smith, or if we're talking about a supervisor. Obviously, in this context, we're talking about the warden. Yes. And in Bivens jurisprudence, to the extent supervisory liability is still a thing in the wake of Ziegler versus Abbasi and Egbert, obviously pleading supervisory liability is a different standard. Now, the appellant has cited two authorities establishing that a plaintiff would need to show actual knowledge on behalf of the supervisor and acquiescence, okay? They did not plead that here. So while we have some technical issues about waiver and whether or not a deliberate indifference claim was actually pled in this pro se complaint against the warden, I would like to say that those issues aside, that was not plausibly pled here. The plaintiff below alleged that on November 2nd of that year, he had notified the warden of the allegations, and on that same day, Judge Smith, as you point out, he was removed and put into administrative detention. That is the opposite of acquiescence. That's a warden aware of threats or allegations of a sexual assault and responded. During that time that the appellant was in administrative segregation, the BOP launched an internal investigation to test the veracity of those allegations. Once that investigation was complete, according to the complaint, the warden was notified that there was no veracity to those allegations, at which point the appellant was returned to general population. Mr. Cato is made aware, I believe, according to his pleading, that Mnuchin had been asked about this or an denied it, the allegations, and so there was no further action taken. I think that's in the pleadings, isn't it? That is in the pleadings, Your Honor. And again, if we take all those allegations as true, as we must in this context, what we have here now is a supervisor who was aware of allegations, took some initial protective measures, after an internal investigation revealed that there was no veracity to the allegations, the inmate was then returned to general population. Again, we have all those allegations. The district court was correct in concluding that there was no supervisory liability plausibly alleged because there's no acquiescence. So, if we turn back, unless there's further questions on that, Your Honor, I'll turn back to the matter of new context and whether or not we have actionable business claims here. Is the word context particularly helpful? From our perspective, almost anything can be a new context, and I think that that actually emanates from the Supreme Court cases. It's a pretty pliable word. It is. It is pretty pliable. And, you know, Egbert says, you know, almost parallel circumstances. And you had that in Egbert when you look at the facts of that case compared to the facts in Bivens where you have a law enforcement officer and you have alleged excessive force and alleged Fourth Amendment violations. They're nearly parallel circumstances and still the context was new. Certainly, that's the case here. But the guidance, it seems to me, that the Supreme Court is giving us, however helpful it is, whatever use we are to make of it, is that for a new context, ask yourself, court, what Congress would do. Here's where the separation of powers issue comes into play. If there are sound reasons to think that Congress might doubt the efficacy of a damages remedy, the courts must refrain from creating it. Those are the words that I think of Ziegler, which are then quoted in Egbert. I mean, so really what we're supposed to do is not simply exercise our own judgment as to what a new context is, but to consider, as difficult as that may be, just what it is Congress would do in terms of creating a new remedy. Am I on the right track? I think you are, Your Honor. I mean, here's the thing. In Ziegler v. Abbasi, you have a clear two-step standard where you have to first question whether or not you have a new context. Then if you do, you then proceed to special factors. In Egbert, Justice Thomas essentially collapsed those two inquiries into one where he says it I think the same two questions continue to animate the analysis. It's just a question of technically whether or not we have one step versus two. But courts, it seems, the way that this has been applied is they'll still consider, do we, is this case different? Which is why, you know, spending time thinking about how a case is similar to established context is almost beside the point. Can we find a difference? If we could find a difference, are there special factors? Is this a situation where Congress is better left? What if we don't find a difference? What if we find that this is analogous, if not more egregious, than prisoner-on-prisoner sexual assault? Well, what I would say first, Your Honor, is that analogous is not enough. It has to be the same. You know, you could have analogous situations where there are still differences. But as to the more egregious point, Your Honor, what I would say is this. Bivens jurisprudence at this point is clearly in a state of stasis, if not outright retraction. And we acknowledge, of course, that the Supreme Court has theoretically left the door open for expansion of Bivens. But when a court is considering whether to do that, typical considerations, traditional considerations of common sense and whether or not a claim is more egregious, that's beside the point. It misses the point. Whether or not to create a cause of action turns solely on the presence or absence of special factors. It's not for courts to ask whether or not a putative claim is more egregious than one that's already recognized. That's a judgment left for the legislature. So I would posit to the court that that is not an argument that should move the needle here. We have to consider whether or not Congress is the correct entity to decide whether or not a cause of action is appropriate here. Well, something that has not yet been touched on, but it has figured certainly into the Supreme Court's decisions of late, and that is the availability of an administrative remedy within the prison setting. Now, of course, there was some, I think, very well-taken debate within the court itself over whether or not a prison administrative remedy is really the sort of remedy that adequately addresses a prisoner's claim, but six beats three. And the opinion of Justice Thomas in Egbert would seem to suggest, does suggest, that the availability of that remedy ought to be enough. What are we to make of that? Justice Sotomayor wrote a very spirited dissent taking a position to the contrary. Again, six beats three. What are we to do with that? Our position on that, Your Honor, is that the BOP's administrative remedy program is enough in and of itself. That is all the special factor we need. It's not, we have more to offer, but that in and of itself is enough. And Justice Thomas, in his opinion, was also clear it's not for courts to judge whether or not alternative process is adequate. That also is a judgment left for the legislature. So the presence of the BOP administrative remedy program is a big one, and it was one that Justice Thomas pointed out and named as a model, as an example of the sort of administrative remedy program that could be adequate. Now, I want to... Well, you know, didn't the Department of Justice express a good bit of frustration with the status quo, as it were, in terms of sexual assaults? And in fact, asked the Sentencing Commission to increase the punishment for folks, for the sexual abuse of a warden? Your Honor, I'm not familiar with that. I'll be honest with you about that. But on a similar point, I did want to acknowledge that we're dealing with an alleged sexual assault here, okay? And we understand and appreciate the gravity of allegations like those.  And I think that's something that courts should consider. The BOP has an OIG, and there are internal investigations when there are serious allegations of employee misconduct, especially when there's evidence of employee misconduct. And when you're dealing with allegations such as sexual assault, I would also say... But that's disciplinary in nature, right? I mean, it's not remedial insofar as a prisoner who's seeking some kind of remedy is concerned. I agree, and we definitely concede that, Your Honor. I use my words intentionally when I say alternative process rather than alternative remedy. Because there does not necessarily need to be a remedy, so long as there is an alternative process. But we do acknowledge that point, that that would not be remedial if there's an OIG investigation. And one of these cases, and I've forgotten which one it is, acknowledges that for every... There is not a remedy for every legal wrong. That seems to be what the suggestion is here. That is correct, Your Honor. And look, Congress has had the opportunity to do this. I mean, we've had two statutes that are addressed in the briefing. The Supreme Court itself has pointed to Congress's silence in the PLRA as persuasive evidence that Congress consciously chose not to codify Bivens as it did 1983 claims for actors under the color of state law. And as far as PREA goes, because that was something that was also addressed in the briefing, I think it's important... First of all, Congress could have, again, taken that opportunity to codify Bivens. It didn't, okay? I think it's important to keep in mind the broader context of what was happening and Supreme Court jurisprudence leading up to that. And I know my time is about to expire. PREA was passed in 2003. In 2001, the Supreme Court issued the Malesko opinion, which was another Eighth Amendment case involving federal prisoners. And in that case, the court said, since Carlson, the court had declined consistently to extend Bivens remedies to new contexts and new categories of defendants. And that was not the only time that the court had done that. I see my time has expired, but what... Go ahead, go ahead. Thank you. There were cases preceding that one as well. My point is this, Your Honors, the writing was on the wall already that Bivens jurisprudence was in jeopardy by the time Congress passed PREA. If Congress was troubled by that, that was the opportunity for it to codify Bivens and ensure that that remedy would be available. So unless there's any further questions, Your Honors, I would just ask that you please affirm the district court's ruling. Thank you. Thank you. Thank you. Your Honors, I'd like to address a few issues related to the failure to protect claim, if I may. First of all, defendants in their briefing made one argument on the failure to protect claim. They argued that Mr. Kalu had not adequately alleged a failure to protect claim at all in his original complaint and in the alternative that he had withdrawn that in that motion to amend. They did not make any argument that Mr. Kalu's allegations were not plausible to satisfy the deliberate indifference standard, and so that argument is forfeited and the court should not even go down that road here today. It should ask one question with respect to the failure to protect claim. Did Mr. Kalu make that claim in his original complaint? And if the court agrees, based on the arguments in our reply brief, that that claim was in the original complaint, then that should end the inquiry with respect to the failure to protect claim. With respect to Bivens' eligibility, the government, excuse me, defendants did raise that in a footnote at the end of Section 1 of their response brief with respect to the failure to protect claim. That too has been forfeited because Bivens, because arguments raised in footnotes are So this court also does not need to address and should not address Bivens' eligibility with respect to the failure to protect claim, but I will urge the court to insist that there be a separate analysis at a minimum for that failure to protect claim because it is even more obvious that the failure to protect claim with respect to the warden arises in the same context as Bistrian and Shorter. It's the exact same doctrinal claim. It's a deliberate indifference claim brought against a prison official for being aware of a substantial risk of harm to an inmate and failing to take reasonable steps to address that risk. So it's even more obvious that it arises in the same context than with respect to Mr. Kalu's sexual assault claim. I'd like to address administrative remedies, which came up during the defendant's piece of argument here. One critical piece of guidance that Egbert provides on administrative remedies is that to be relevant as a special factor, Congress and the executive must have made a judgment that those remedies are sufficient to address the harm. And here, based on PREA and based on the PLRA, we know that Congress thought the opposite. Congress expected that inmates would have the ability to bring a Bivens lawsuit after exhausting administrative remedies, either under the PREA framework or with respect to the PLRA more generally. And then finally, Your Honors, the Malesko case, which defendants cited just towards the end of their portion of argument just now, operates in our favor. I see my time has expired if I may just sort of finish this one point. That case stated very clearly that if a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens claim against the offending individual officer subject to the defense of qualified immunity. So that opinion was published in 2001, just two years before Congress enacted PREA, and that illustrates perfectly the judicial backdrop that Congress was operating against. It understood and assumed that there would be a Bivens remedy available to prisoners to address this zero-tolerance policy for addressing sexual assault in prisons. I have gone over my time, Your Honors. Unless there are other questions, we would ask that the Court reverse the District Court and reinstate Mr. Collie's Eighth Amendment claims. Thank you very much. Thank you. Mr. Randolph, I believe you're here on a pro bono basis with your law firm, and we very much appreciate your efforts. Thank you. Thank you very much, Your Honors.